cabin fittings of a small vessel, which, from his description, Pilot Nelson, one of the owners of the pilot-boat Enchantress, was convinced belonged to the Enchantress, which was lost in the same gale. Forty miles south of that point Capt. Leonhard saw, at a distance of about 100 yards, a triangular piece of decking eight feet or thereabouts in length. He described it as being the bow of a small vessel, the planks of which were not over three inches in width, and laid parallel to each other. From this description Mr. Sheldon, who was familiar with the appearance and build of the Cythera, believed that this piece of wreckage was the forward hatchway of that yacht. *Fifth.* On the 11th day of March, at 10 P. M., the center of a great storm, commonly known as "the blizzard," was off the coast of Norfolk, Va. *Sixth.* The probable situation of the Cythera at 10 P. M. on March 11th was between Cape Henry and Cape Hatteras, if not within the center, at least within the radius, of this storm. Hearsay evidence of Capt. Leonhard and Capt. Hubbard has been offered and received, and under the decisions may be considered. *Fosgate* v. *Hydraulic Co.*, 12 Barb. 352; *Jackson* v. *Boneham*, 15 Johns. 226. This evidence, however, is not of much importance, except that it shows the family and friends of the testator have made every effort, and exhausted apparently every source of information, to ascertain news of him and the Cythera, but without success.

It is well settled that it is not necessary that any specific period should elapse to create the presumption of death, but that it may arise whenever the facts of the case will warrant it. *Stouvenel* v. *Stephens*, 2 Daly, 319. And if the party whose death is in question went to sea, and nothing has been heard of the vessel in which he sailed, or of those who accompanied him, the presumption, after a sufficient length of time has elapsed, will be that the vessel was lost, and that all on board perished. *Merritt* v. *Thompson*, 1 Hilt. 553, and cases cited. Where, when last heard from, one was in contact with some specific peril, this circumstance may raise a presumption of death, without regard to the duration of the absence. *Lancaster* v. *Insurance Co.*, 62 Mo. 121; *White* v. *Mann*, 26 Me. 361. In *Merritt* v. *Thompson, supra*, it was held that the presumption of death does not rest upon the fact that the party had not been heard from for 17 months, but on the weightier circumstance that the vessel had not been heard from. In *Gerry* v. *Post*, 13 How. Pr. 118, it was held that, if a vessel has been absent double the longest time of a voyage, she may be presumed to be lost; and it follows, as a consequence, that all perished with her, if none of the passengers or crew are afterwards heard of.

On March 11, 1841, one Leo Wolf departed from New York in the steamship President. Nothing was heard of the vessel or of her passengers. The usual time to cross the Atlantic was 14 or 15 days, and the longest passages did not exceed 23 or 24 days. It was held that the steamer was lost before May, 1841, and that Leo Wolf's death occurred before that time. *Oppenheim* v. *Wolf*, 3 Sandf. Ch. 623. I am convinced by the evidence that Mr. Stewart is dead, and that his death occurred between the 10th day of March, 1888, and the 17th day of September, 1888, the date of the petition herein. The due execution of the paper propounded as his last will and testament, and his mental capacity to make the same, are shown by the testimony of Mr. Nichols and Mr. Minturn, the subscribing witnesses thereto. It is admitted to probate.

---

## *In re* HAIG'S ESTATE.

### (*Surrogate's Court, New York County.* July, 1888.)

1. EXECUTORS AND ADMINISTRATORS—PROCEEDINGS TO SELL LAND—PLEADING.
   Code Civil Proc. N. Y. § 2750, provides that, "at any time within three years after letters were first duly granted * * * upon the estate of a decedent, an executor or administrator * * * may present to the surrogate's court * * * a written petition for a decree directing the disposition of the decedent's real property," etc. *Held*, that a petition under this section is not defective by reason of its omission

to state when the letters testamentary were issued, where it avers their issuance, and states facts showing that the proceeding was commenced within three years after they were issued.

**2. SAME—POWER OF SALE—PROVISIONS OF WILL.**
Such petition need not allege that the property sought to be disposed of is not subject to a valid power of sale for the payment of the debts or funeral expenses, where the will shows such fact.

**3. SAME—DEATH OF JOINT OWNER.**
The death of decedent's brother, who had an interest in the land sought to be sold, since the commencement of the proceeding, will not affect the regularity of the proceeding; the court under Code Civil Proc. N. Y. § 2778, having power only to vest in a purchaser such interest in the estate disposed of as the decedent had at the time of his death.

**4. SAME—PARTIES—MORTGAGEES.**
The holder of a mortgage upon the property is not a necessary party to the proceeding, since any disposition made of the property under a decree would be subject to the lien of the mortgage.

On objections to the regularity of proceedings to sell the land of David Haig, deceased, instituted under Code Civil Proc. N. Y. § 2750, which provides that "at any time within three years after letters were first duly granted within the state, upon the estate of a decedent, an executor or administrator * * * may present to the surrogate's court * * * a written petition for a decree, * * * directing the disposition of the decedent's real property," etc.

RANSOM, S. This proceeding was brought by the executor of the will of the decedent for the disposition of his real estate for the payment of his debts. It is claimed, in behalf of certain of the parties interested in such real estate, that the proceedings are defective in certain particulars, which I proceed to consider and dispose of as follows:

1. The claim that the petition is defective by reason of its omission to state when the letters testamentary were issued is unfounded. While failing to show the precise date of their issuance, the petition avers their issuance, and states facts showing that the present proceeding was commenced within three years after they were issued. This is sufficient. Code Civil Proc. § 2750.

2. The will of the decedent shows that the property sought to be disposed of is not subject to a valid power of sale for the payment of the debts or funeral expenses, and there is nothing in the law that requires the petition to contain an allegation of this fact. Id. § 2752.

3. Thomas Haig, the brother of the decedent, who was a party to this proceeding, and is referred to in the petition as one of his heirs, and as a person upon whose death, without issue, the decedent would have become entitled to an additional interest in certain of the real estate in the petition mentioned, has died since the commencement of the proceeding. It is alleged, and not disputed, that his heirs are parties thereto. The statute (Id. § 2778) recognizes the power of the court to vest in a purchaser such interest in the estate disposed of as the decedent had at the time of his death, and makes no provision with respect to the disposition of any estate or interest subsequently acquired. It is therefore unnecessary to inquire whether or not such interest or estate has been so acquired. The death of the decedent's brother has therefore no effect on the regularity of this proceeding.

4. The objection to the omission to make a party to the proceeding the holder of a mortgage upon the property is of no effect. It does not appear that such holder was a creditor of the decedent at the time of his death, and the allegations of the petition negative the notion that he was. It is stated on behalf of the petitioner, and not denied by the contestants, that the mortgage was a lien upon the property when acquired by the decedent and the other parties in interest. Any disposition which may be made of such prop-

erty under the decree which shall be entered herein, would be subject to the lien of the mortgage. The holder is an unnecessary party hereto. The petitioner is entitled to a decree.

---

### *In re* LEINKAUF'S ESTATE.

#### (*Surrogate's Court, Westchester County.*  September, 1888.)

WILLS—CONSTRUCTION—NATURE OF ESTATE—LIMITATION—TIME OF PAYMENT.

A will provided that the children of the testatrix should not be paid the principal of legacies bequeathed to them until they arrived at a certain age, and that in case of the death of any child without issue before arriving at such age, his "share shall revert to and form part of the residuary estate, to be divided into shares, for the benefit of my surviving children." *Held*, that on the death of one of the children without issue before arriving at the specified age, the other children were not entitled to the decedent's share until they had arrived at such age.

Judicial settlement of the accounts of Herman J. Leinkauf and others as executors of the will of Donah Leinkauf, deceased.

*J. H. K. Blauvelt*, for the executors.   *Wm. Bernard*, special guardian.

COFFIN, S.   All that seems to be necessary in this matter is to ascertain the meaning and intention of the testatrix, as expressed in her will. She was twice married, her first husband's name being Cohen. After making provision for her last husband she disposed of the residue of her estate by directing it to be divided into seven equal shares for her then seven children, of whom three were sons, and four daughters, all of whom were minors, with one exception. Each son's share she directed to be invested on bond and mortgage on sufficient real estate, in the executors' names, the interest or income arising therefrom to be paid to her son, Samuel M. Cohen, who was of age, until he should arrive at the age of 30 years, when he was to be paid the principal of his share. The income of the shares of the sons who were minors was to be paid to their respective guardians for their support and education, until they should severally arrive at the age of 21 years, when the income was to be paid to them personally; and when they respectively attained the age of 30 years, each one's principal was to be paid to him. The executors were also authorized, in their discretion, to make advances to the sons out of their respective shares after they had attained the age of 25 years, provided that such advances should not exceed one-half of each share. The shares of the girls were to be invested in like manner, and the income to be applied to support and education, until they were respectively married, or became 21, when it was to be paid to them for life, with remainder to their issue; and in case of death without issue, the share of the one so dying was given to the surviving children, in equal proportions. Then, by a subsequent clause, it was provided that "in case of the death of any or either of my sons before he or they shall have received the whole of his or their share or shares, such share or shares of said deceased son or sons, or the remainder thereof, as the case may be, shall immediately on such decease be paid over to the lawful issue of said son or sons, in equal proportions, share and share alike. Should such deceased son or sons leave no lawful issue, then such share or shares shall revert to and form part of my residuary estate, to be divided into shares for the benefit of my surviving children, as aforesaid." A provision was also made for letting in any after-born children to share in the residuum, in the same manner and under the same restrictions as given to the children then living. She had such after-born children. One of the sons has died, pending the administration of the estate, at the age of 25 years and upwards, but under 30, and without issue. The question is, are the surviving brothers and sisters now entitled to his share, or what may remain of it—being about $980 —in possession, or must it still be held by the executors? It seems very clear, and it is so held, that in the very language of the will his "share shall revert